877 A.2d 330 (2005)
379 N.J. Super. 205
GANNETT NEW JERSEY PARTNERS, LP, Plaintiff-Appellant,
v.
COUNTY OF MIDDLESEX and Margaret Pemberton, Custodian of Records, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued February 8, 2005.
Decided July 13, 2005.
*332 Arlene M. Turinchak, Somerset, argued the cause for appellants (McGimpsey & Cafferty, attorneys; Ms. Turinchak and Thomas J. Cafferty, on the brief).
Eric M. Aronowitz, First Deputy County Counsel, argued the cause for respondents (Thomas F. Kelso, Middlesex County Counsel, attorney; Mr. Aronowitz, on the brief).
Before Judges SKILLMAN, GRALL and RIVA.
The opinion of the court was delivered by
SKILLMAN, P.J.A.D.
This appeal involves the interpretation of various provisions of the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, which was enacted in 2002, L. 2001, c. 404, to take the place of the former Right to Know Law, N.J.S.A. 47:1A-2 to - 4.
On or about February 27, 2004, the United States Attorney for New Jersey served grand jury subpoenas for production of documents upon the offices of the County Counsel, Freeholder Director and Business Administrator for Middlesex County. The service of these subpoenas as well as service of subpoenas for documents upon various State agencies, including the Governor's Office, were widely reported in the news media, including newspapers published by plaintiff Gannett New Jersey Partners, L.P. See Sandy McClure, "Feds Subpoena State Offices," Asbury Park Press, Mar. 6, 2004, at A1; Sandy McClure, "More Data Released in Probe into Fund-raiser," Asbury Park Press, Mar. 25, 2004, at A1.
These newspaper stories indicated that the documents sought by the subpoenas related to a controversy between the Township of Piscataway and the Halper family regarding Piscataway's proposed condemnation of the Halpers' seventy-five-acre farm, called the Cornell Dairy Farm. See "More Data Released in Probe into *333 Fund-raiser," supra. One story stated that Middlesex County had offered to contribute $4 million towards Piscataway's acquisition of the property. Ibid. This story indicated that the federal investigation focused on whether a Democratic fundraiser named David D'Amiano had encouraged a Halper family member, Mark Halper, to make a $10,000 campaign contribution to the State Democratic Party in exchange for assistance from the McGreevey Administration in the family's efforts to retain ownership of the farm. Ibid. The story also reported that Mark Halper had made a direct appeal to Governor McGreevey for his help in retaining the farm in the Halper family. Ibid.
On March 18, 2004, Gannett sent an e-mail to Middlesex County requesting production under OPRA of the "federal subpoena[s] issued to the county and all information supplied to the U.S. Attorney or other federal authorities in response to the subpoenas." Middlesex County produced voluminous documents in response to this request. However, the County refused to produce copies of the federal subpoenas and certain other documents.
Gannett then filed this action in the Law Division to compel production under OPRA of the documents the County had refused to release. Gannett also sought production under the common law. The matter was brought before the trial court by an order to show cause.
Before the return date, the County submitted an index of the documents it had refused to produce together with a statement of its reasons for concluding that those documents are exempt from release under OPRA. The index indicated that the documents the County had not produced consisted of the federal subpoenas, telephone billing records of the County Administrator's Office, the Freeholder Director's computer index of addresses and telephone numbers, the County Counsel's and County Administrator's telephone message pad entries, County Counsel's appointment book, handwritten correspondence between County Counsel and his secretary, handwritten notes prepared by a county planner, Linda Busch, regarding certain meetings she had attended and letters to County Counsel.
After reviewing these documents, the court concluded in an oral opinion that none of the documents listed in the index were required to be released under OPRA or the common law. Accordingly, the court entered final judgment dismissing Gannett's complaint.
On appeal, Gannett argues that the federal subpoenas and other documents that the County refused to produce are public records that are not exempt from disclosure under any provision of OPRA. Gannett has abandoned its claims under the common law.
We conclude that OPRA does not require the County to release the subpoenas or the majority of other documents withheld from disclosure. However, the County has failed to show that Busch's handwritten notes or the letters to County Counsel are exempt from disclosure under OPRA. Accordingly, we affirm in part, reverse in part and remand to the trial court.

I
Preliminarily, we question whether Gannett's request for "all information supplied to the U.S. Attorney or other federal authorities" in response to the grand jury subpoenas was a proper request for public records under OPRA. N.J.S.A. 47:1A-5(f) provides in pertinent part that "[t]he custodian of a public agency shall adopt a form for the use of any person who requests access to a government record held or controlled by the public agency," which *334 "shall provide space for ... a brief description of the government record sought." Thus, OPRA requires a party requesting access to a public record to specifically describe the document sought. See MAG Entm't, LLC v. Div. of Alcoholic Beverage Control, 375 N.J.Super. 534, 546-49, 868 A.2d 1067 (App.Div.2005). OPRA does not authorize a party to make a blanket request for every document a public agency has provided another party in response to an OPRA request or, in this case, a federal grand jury subpoena. Such a request seeks access not merely to public records but also into the nature and scope of a third party's inquiry to a government agency.
In addition to whatever interest a government agency may have in maintaining the confidentiality of its records, a party who requests access to public records also may have an interest in maintaining the confidentiality of its inquiry. This need for confidentiality is particularly strong when the party requesting the production of documents is a law enforcement agency such as the United States Attorney's Office. A United States Attorney's investigative inquiry through a grand jury subpoena is protected by federal law, Fed. R.Crim.P. 6(e); see United States v. Educ. Dev. Network Corp., 884 F.2d 737, 740-41 (3d Cir.1989), cert. denied, 494 U.S. 1078, 110 S.Ct. 1806, 108 L.Ed.2d 937 (1990), and the release of documents the United States Attorney believes to be relevant to such an inquiry has the potential for interfering with a federal criminal investigation.
Moreover, the interest of third parties in protecting the confidentiality of their requests for access to public documents is not limited to law enforcement agencies. Suppose Gannett suspected that another news organization was conducting an investigation into a public agency's financial practices and had sought production of documents under OPRA in connection with that investigation. Could Gannett make a blanket request to the public agency for the production of all records provided to the other news organization?
But even assuming that Gannett's OPRA request was improper and that Middlesex County could have refused to produce any documents in response to that request, the County did not take that route but instead provided Gannett with most of the documents it had furnished to the United States Attorney's Office. Furthermore, when Gannett brought this action seeking disclosure of the remaining documents, the County did not defend on the ground that Gannett's OPRA request was improper but instead claimed that the withheld documents were confidential under OPRA and submitted a list of the withheld documents and the grounds for the County's confidentiality claims. Such a voluntary disclosure of most of the documents sought by Gannett and refusal to release the remaining documents solely on confidentiality grounds constituted a waiver of whatever right the County may have had to deny Gannett's entire OPRA request on the ground that it was improper. See Mobil Oil Corp. v. U.S. Envtl. Prot. Agency, 879 F.2d 698, 700-02 (9th Cir. 1989). Therefore, we consider the County's confidentiality claims with respect to each of the categories of withheld documents.

II
We first consider whether OPRA requires Middlesex County to provide Gannett with the federal grand jury subpoenas served upon County officials. There is no dispute that the subpoenas are "government record[s]" under OPRA's expansive definition of this term, which includes not only documents "made, maintained or kept on file in the course of [a public agency's] *335 official business," but also any document "received in the course of [the agency's] official business." N.J.S.A. 47:1A-1.1. Since the subpoenas were received in the course of the agency's official business, they must be released to Gannett unless protected from disclosure by other provisions of OPRA.
N.J.S.A. 47:1A-3 provides in pertinent part that "where it shall appear that the record or records which are sought to be inspected, copied, or examined shall pertain to an investigation in progress by any public agency, the right of access provided [under OPRA] may be denied if the inspection, copying or examination of such record or records shall be inimical to the public interest." Although this section does not directly apply to a federal grand jury subpoena because the definition of "public agency" is limited to agencies of this State, N.J.S.A. 47:1A-1.1, N.J.S.A. 47:1A-3 reflects a general legislative recognition of the public interest in law enforcement and other investigatory agencies maintaining the confidentiality of documents relevant to ongoing investigations. See Loigman v. Kimmelman, 102 N.J. 98, 106-08, 505 A.2d 958 (1986).
Moreover, OPRA directs State custodians of public records to deny access to documents that are exempt from disclosure under federal law. N.J.S.A. 47:1A-5(a) provides that a custodian is not required to disclose "a government record... exempt from public access by ... any federal law," and N.J.S.A. 47:1A-9 states that OPRA does not "abrogate any exemption of a public record or government record from public access heretofore made pursuant to ... any federal law."
The federal Freedom of Information Act, 5 U.S.C.A. § 552, provides that the disclosure requirements of that statute do not apply to "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information... could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C.A. § 552(b)(7)(A). The purpose of this exemption is to prevent premature disclosure of investigatory materials that could be used in a federal law enforcement action. FBI v. Abramson, 456 U.S. 615, 621, 102 S.Ct. 2054, 2059, 72 L.Ed.2d 376, 383 (1982).
The party with the interest in maintaining the confidentiality of investigatory materials and the capacity to explain the need for that confidentiality is the investigatory agency, here the United States Attorney's Office, rather than the party in possession of the materials, here Middlesex County. However, the United States Attorney's Office was not provided with notice of Gannett's request to Middlesex County for production of the subpoenas or the complaint challenging the County's denial of access. Consequently, the United States Attorney's Office was deprived of the opportunity to assert the confidentiality of the grand jury subpoenas under 5 U.S.C.A. § 552(b)(7)(A).
N.J.S.A. 47:1A-5(g) generally places the burden upon the custodian of a public record to state the "specific basis" for the denial of access, and N.J.S.A. 47:1A-6 states that "[t]he public agency shall have the burden of proving that the denial of access [to a document] is authorized by law." However, the custodian may not be in a position to discharge this burden if the asserted confidentiality interest in a document is not that of the government agency upon which the document request was made but rather another government agency, in this instance the United States Attorney's Office.
The exemption from disclosure provided by 5 U.S.C.A. § 552(b)(7)(A) is dependent *336 upon a showing that "(1) a law enforcement proceeding is pending or prospective and (2) release of the information could reasonably be expected to cause some articulable harm." Manna v. U.S. Dep't of Justice, 51 F.3d 1158, 1164 (3d Cir.), cert. denied, 516 U.S. 975, 116 S.Ct. 477, 133 L.Ed.2d 405 (1995). It is undisputed that a criminal investigation was pending when Gannett requested Middlesex County to release copies of the grand jury subpoenas served by the United States Attorney's Office. However, the custodian for public records for Middlesex County was not in a position to know whether the release of those subpoenas "could reasonably be expected to cause some articulable harm" to that criminal investigation. Ibid. Only the United States Attorney's Office would have that knowledge, and it was not made a party or even given notice of Gannett's action to compel release of the subpoenas. Under these circumstances, we conclude that in order to preserve the confidentiality interests of federal law enforcement agencies protected by 5 U.S.C.A. § 552(b)(7)(A), a court should presume that the release of the grand jury subpoenas could interfere with the federal criminal investigation and uphold a denial of access under OPRA.

III
We next consider whether OPRA requires the disclosure of the County Administrator's telephone billing records. N.J.S.A. 47:1A-9(b) provides:

The provisions of [OPRA] shall not abrogate or erode any executive or legislative privilege or grant of confidentiality heretofore established or recognized by the Constitution of this State, statute, court rule or judicial case law, which privilege or grant of confidentiality may duly be claimed to restrict public access to a public record or government record.
[Emphasis added.]
In North Jersey Newspapers Co. v. Passaic County Bd. of Chosen Freeholders, 127 N.J. 9, 601 A.2d 693 (1992), the Court held that there was no right of public access to telephone billing records under the Right to Know Law, which was the predecessor to OPRA. In reaching this conclusion, the Court noted the strong interest of both public officials and persons with whom they communicate by telephone in maintaining the confidentiality of those communications:
One problem with unrestricted access to the telephone numbers called is the disclosure not only of the record of the public official's calls but, inferentially, the identity of those who have called the official. Phone calls made to the public official's office will usually be returned
....
....
In addition, there may be times-and they may be the most critical times-when a government official will have to make a telephone call that has an arguable claim to confidentiality-times when, for example, a mayor might need to call a city council member from an opposing political party on a most highly sensitive community issue to enlist that person's support; or times when a mayor might need to call a community activist to calm troubled waters, without causing disruption that might result from appearing to negotiate with a dissident who may, at the moment, be perceived as a lawbreaker....
....
... [A] person's privacy interest includes "the people and places one calls on a telephone, no less than the resulting conversations." Thus, a person's expectation of privacy extends to telephone toll-billing records.

*337 [Id. at 16-18, 601 A.2d 693 (citations omitted).]
North Jersey Newspapers constitutes "judicial case law" that "established or recognized" the "confidentiality" of telephone billing records before enactment of OPRA within the intent of N.J.S.A. 47:1A-9(b). Therefore, we affirm the trial court's denial of access to those records.
There is an additional reason why OPRA does not compel disclosure of the County Administrator's telephone billing records. N.J.S.A. 47:1A-1.1 provides in pertinent part that the term "government record" does not include the "portion of any document which discloses the ... unlisted telephone number ... of any person[,]" and N.J.S.A. 47:1A-5(g) provides that a request for access to a government document may be denied on the ground that it "would substantially disrupt agency operations." The voluminous telephone billing records sought by Gannett, which cover a twelve-month period, undoubtedly include unlisted telephone numbers, and there is no indication that there is any reasonably practical method of culling out those numbers from the rest of the numbers in the records.

IV
Gannett also challenges the County's denial of access to the Freeholder Director's computer index of addresses and telephone numbers, the telephone message pad entries of the County Counsel and County Administrator and County Counsel's appointment book. The Freeholder Director's index of addresses and telephone numbers and the telephone message pad entries contain the same type of information the Court in North Jersey Newspapers found to be protected by an expectation of privacythe identities and telephone numbers of persons who call and are called by public officials. See 127 N.J. at 16-18, 601 A.2d 693. Therefore, the trial court correctly concluded that those documents are not subject to public access under OPRA.
Although County Counsel's appointment book does not contain telephone numbers, it reveals the identity of persons with whom County Counsel planned to meet and the purpose of the meetings. Such information implicates privacy interests of persons who meet with public officials similar to the identity of persons who call and are called by public officials. Consequently, we conclude that the rationale of North Jersey Newspapers extends to the information contained in County Counsel's appointment book.

V
We next consider whether OPRA requires the disclosure of County Counsel's note to his secretary and her response relating to a pending condemnation action in which the County agreed to provide part of the funding for the acquisition and was appearing as amicus curiae. The Rules of Court extend broad protection from disclosure to attorney work product relating to litigation. Rule 4:10-2(c) provides in pertinent part:
In ordering discovery ... the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.
N.J.S.A. 47:1A-9(b) provides in pertinent part that "[t]he provisions of [OPRA] shall not abrogate or erode any ... grant of confidentiality ... recognized by ... court rule." Consequently, if a document is protected work product under Rule 4:10-2(c), it is also protected from disclosure under OPRA.
*338 An amicus curiae is not considered a party to litigation for some purposes, such as the right to raise issues that have not been raised by a party, Bethlehem Township Bd. of Educ. v. Bethlehem Township Educ. Ass'n, 91 N.J. 38, 48-49, 449 A.2d 1254 (1982). However, the communications between an amicus curiae and its attorney are protected by the attorney-client privilege just as any other communication between an attorney and client, N.J.R.E. 504, and the work-product privilege may be invoked in some circumstances by an attorney who does not represent a named party to an action. See United Coal Cos. v. Powell Constr. Co., 839 F.2d 958, 966 (3d Cir.1988). In this case, Middlesex County has a direct interest in the pending condemnation action, comparable to the municipal condemnor, because it has agreed to fund a substantial portion of the cost of acquisition. Consequently, we conclude that County Counsel should be treated as an attorney for a party and was entitled to assert the work-product privilege as a basis for refusing to disclose documents relating to the condemnation action. We also are satisfied based on our review of the documents that County Counsel's note to his secretary and her response to him qualify as attorney work product.

VI
The County refused to release the handwritten notes of Linda Busch, a principal planner in the County Planning Department, regarding the possible entry into the Farmland Preservation Program of the Cornell Dairy Farm on the ground that those notes fall within the exemption from disclosure provided by N.J.S.A. 47:1A-1.1 for "inter-agency or intra-agency advisory, consultative or deliberative material."
The exemption from disclosure provided by N.J.S.A. 47:1A-1.1, which is often referred to as the deliberative process privilege, see In re Readoption with Amendments of Death Penalty Regulations N.J.A.C. 10A:23, by the N.J. Dep't of Corr., 367 N.J.Super. 61, 73-74, 842 A.2d 207 (App.Div.), certif. denied, 182 N.J. 149, 862 A.2d 57 (2004), is aimed at protecting the quality of government decisions by shielding the communications received by a decision maker from public disclosure, NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 151, 95 S.Ct. 1504, 1516-17, 44 L.Ed.2d 29, 47-48 (1975). To qualify for this privilege, two conditions must be satisfied: (1) the document must be predecisional, meaning it was "generated before the adoption of an agency's policy or decision," and (2) it "must be deliberative in nature, containing opinions, recommendations, or advice about agency policies." In re the Liquidation of Integrity Ins. Co., 165 N.J. 75, 84-85, 754 A.2d 1177 (2000). The privilege does not extend to "[p]urely factual material that does not reflect deliberative processes." Id. at 85, 754 A.2d 1177. Therefore, if a document contains both deliberative and factual materials, the deliberative materials must be redacted and the factual materials disclosed. See id. at 87, 754 A.2d 1177 (quoting McClain v. Coll. Hosp., 99 N.J. 346, 363, 492 A.2d 991 (1985)); see also Schreiber v. Soc. for Sav. Bancorp., Inc., 11 F.3d 217, 220-21 (D.C.Cir.1993). Although Integrity Insurance did not involve the interpretation of OPRA, we are satisfied that the deliberative process exemption incorporated in N.J.S.A. 47:1A-1.1 adopts the principles set forth in that opinion. See In re Readoption with Amendments of Death Penalty Regulations, N.J.A.C. 10A:23, supra, 367 N.J.Super. at 73-75, 842 A.2d 207.
Ms. Busch's thirteen pages of handwritten notes contain primarily factual material, in particular her record of conversations with the Halpers and their *339 representatives. However, there are a number of entries within her notes that appear deliberative in nature, in particular her tentative views concerning the course of action the County should follow in connection with the acquisition of the Halpers' property. Therefore, the trial court should have redacted the deliberative entries in Busch's notes and then released the notes with those redactions to Gannett. Moreover, if the court had a question whether any factual materials in the notes reflect deliberative processes, it should have conducted an appropriate in camera hearing. See Hartz Mountain Indus., Inc. v. N.J. Sports & Exposition Auth., 369 N.J.Super. 175, 183, 848 A.2d 793 (App. Div.), certif. denied, 182 N.J. 147, 862 A.2d 56 (2004).
The trial court failed to follow these procedures and instead erroneously concluded that all of Busch's notes were deliberative in nature and consequently exempt from disclosure. Accordingly, we reverse the part of the judgment that sustained the County's refusal to release those notes and remand this part of the case for reconsideration in accordance with our opinion.

VII
Finally, we consider whether OPRA requires Middlesex County to provide Gannett access to two letters to its County Counsel, one from the attorney for the defendants in the condemnation action transmitting an application to the Farmland Preservation Program and the other a handwritten note from David D'Amiano enclosing a memorandum from Mark Halper indicating the amount that the Halper family was seeking for transfer development rights to its property. The County provided the following explanation for denying Gannett access to these letters: "Exemption is claimed under Attorney-client privilege (N.J.S.A. 47A:1A-1.1) settlement discussions of actively litigated matter."
The two letters are not protected by the attorney-client privilege. This privilege extends only to confidential communications between an attorney and client. See N.J.R.E. 504(1); State v. Schubert, 235 N.J.Super. 212, 220, 561 A.2d 1186 (App. Div.1989), certif. denied, 121 N.J. 597, 583 A.2d 302, cert. denied, 496 U.S. 911, 110 S.Ct. 2600, 110 L.Ed.2d 280 (1990). The letters are not from any client of County Counsel but rather from third parties.
The letter from the attorney for the defendants in the condemnation action transmitting their application to the Farmland Preservation Program is also plainly not inadmissible under N.J.R.E. 408 as a "statement[] ... in settlement negotiations" because the letter does not contain any "offer[] of compromise" or other statement related to settlement of the condemnation action. The handwritten note from David D'Amiano would not be inadmissible under N.J.R.E. 408 because the rule only applies to statements relating to settlement by a party or the party's attorney, and D'Amiano was neither a party to the condemnation action nor an attorney to a party. Although the memorandum from Mark Halper attached to that letter reflects the Halper family's view of the value of development rights to the property, it is not a settlement offer. Therefore, that memorandum probably would not be inadmissible under N.J.R.E. 408. Under these circumstances, we conclude that even if a settlement offer would be exempt from disclosure under OPRA in some circumstances, the County has failed to establish adequate grounds for denial of access to either letter.
Accordingly, we reverse the part of the final judgment that upheld the County's refusal to release Linda Busch's handwritten *340 notes and the two letters to County Counsel. We remand the case to the trial court to determine which entries in Busch's notes are deliberative materials that should be redacted. The judgment is affirmed in all other respects.