**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1173-16T1

NEW JERSEY DEPARTMENT OF
ENVIRONMENTAL PROTECTION,
COASTAL AND LAND USE
COMPLIANCE AND ENFORCEMENT,

    Petitioner-Respondent,

v.

WILLIAM WARRINGTON,

    Respondent-Appellant.

_____

Argued March 12, 2018 — Decided August 17, 2018

Before Judges Accurso, O'Connor and Vernoia.

On appeal from the New Jersey Department of
Environmental Protection.

Mitchell H. Kizner argued the cause for
appellant (Flaster Greenberg, PC, attorneys;
Mitchell H. Kizner and Scott C. Oberlander,
on the briefs).

Robert J. Kinney, Deputy Attorney General,
argued the cause for respondent (Gurbir S.
Grewal, Attorney General, attorney; Melissa H.
Raksa, Assistant Attorney General, of counsel;
Robert J. Kinney, on the brief).

PER CURIAM

Appellant William Warrington appeals from the New Jersey Department of Environmental Protection's (NJDEP) final agency decision finding he violated the Freshwater Wetlands Protection Act (FWPA), N.J.S.A. 13:9B-1 to -30, and its regulations, N.J.A.C. 7:7A-1.1 to -22.20, and the Flood Hazard Area Control Act (FHACA), N.J.S.A. 58:16A-50 to -101, and its regulations, N.J.A.C. 7:13-1.1 and -24.11, by clearing trees and vegetation, filling and grading, constructing a gravel road and installing a concrete pad on wetlands, freshwater wetlands transition and flood hazard areas on his Elk Township property. Because we are convinced the NJDEP's findings and conclusions are supported by substantial credible evidence, we affirm.

I.

The essential facts are not in dispute. Warrington owns an over three-acre, rectangular-shaped residential property with its eastern boundary comprised of approximately 100 feet of frontage on Whig Lane Road. The northern boundary line extends approximately 1180 feet west from the northern point of frontage on Whig Lane Road. The southern boundary line is more than 1200 feet, and extends westerly from the southern point of frontage on Whig Lane Road. The western boundary, located at the rear of the property, is approximately 150 feet. As described by the DEP, the

property "is narrow and deep, widening somewhat toward the western boundary line."

The property is comprised of four distinct areas.  The first is the "residential area," which is closest to Whig Lane Road and extends approximately 250 feet westerly from the road.  This is the area where Warrington's home is situated.

We refer to the second area as the "front property."  It extends westerly approximately 230 feet from the residential area to a fifty-foot-wide riparian buffer through which a "tributary of Still Run" dissects the property.[1]  The fifty-foot-wide buffer which includes the tributary is the property's third area, which we refer to as the "riparian buffer."  The fourth area consists of all of the property extending westerly from the riparian buffer to the property's western boundary.  We refer to the fourth area as the "rear property."

Commencing in 2000, and over the ensuing years, Warrington cleared vegetation from the front property and riparian buffer and removed vegetation and trees from the rear property.  Warrington also filled and graded the front property and rear property. Warrington replaced the wooden decking of an existing twelve-foot-

---

[1]  A tributary is a "river or stream flowing into a larger river or stream."  Webster's II New College Dictionary 1205 (3d ed. 2005).

wide bridge over the tributary, and constructed an access road which wound from Whig Lane Road, through the residential area, front property, across the bridge and in a large circle on the rear property. In 2008, Warrington built a thirty by forty-foot concrete pad on the rear property in the middle of the circular portion of the access road. He later constructed a pole barn on the pad.

In 2008, NJDEP Inspector Olufunsho Sekoni conducted a site inspection of the property, and took four soil borings from the rear property. On May 13, 2008, he issued a Field Notice of Violation (FNOV) to Warrington, charging Warrington engaged in unauthorized regulated activities on the rear property and in the riparian buffer by constructing the concrete pad, clearing vegetation and disturbing approximately 14,000 square feet of wetlands transition area, clearing and disturbing approximately 8000 square feet of wetlands, installing a bridge across the tributary, filling and grading, and creating a road in freshwater wetlands. The FNOV directed corrective or restoration actions including "restor[ation] [of] the site to its predisturbed condition or appl[ication] for permits from" the Division of Land Use Regulation.

The next day, Warrington prepared a letter advising Sekoni that his wife contacted the Division to obtain the necessary

permits. Warrington advised it was his "intention to get all permits rather than try to restore the land [to] its original condition." Warrington retained Key Engineering, Inc. for the purpose of obtaining the necessary permits.

On June 2, 2010, NJDEP Inspector Trent Todash inspected the property. Prior to the inspection, he reviewed soil survey overlays to determine the soils in the area, and reviewed NJDEP files and historical aerial photographs of the property. During his inspection, he focused on the residential area, the front property and the riparian buffer.

Todash issued a notice of violation (NOV) on June 29, 2010, alleging Warrington violated the FWPA by "clearing[ ]vegetation, filling and grading to create an access road" and constructing the concrete pad on wetlands and freshwater wetlands transition areas in the front property and rear property. It further alleged Warrington violated the FHACA by constructing a road, and filling and grading within the riparian buffer. Warrington was directed to submit a restoration plan or an explanation of planned corrective measures.

On September 27, 2010, Robert Scott Smith from Key Engineering submitted a revised September 21, 2010 "Wetlands Boundary Survey" on Warrington's behalf to "demonstrate potential compliance with the terms and conditions of a Freshwater Wetland General Permit

5

10B, Freshwater Wetland Transition Area Waiver . . . ." The survey showed the roadway, bridge and concrete pad, and included comments acknowledging the placement of fill and clearing of vegetation, and a "total disturbance of wetlands and [wetlands] transition areas associated with [the concrete] pad and [circular] loop road [of] 13,500" square feet in the rear property.

Ten months later, on July 13, 2011, Todash further inspected the property and observed that Warrington constructed a pole barn on the concrete pad. In August 2011, Todash conducted an inspection of the front property and riparian buffer, and took three soil borings at locations immediately adjacent to Warrington's property that had not been filled or disturbed. He considered making a fourth soil boring, but did not because the location had standing water. He did, however, observe vegetation consistent with the presence of wetlands in that area.

Based on his analysis of the soil borings, observations of the fill and vegetation, and examination of the county soil surveys, Todash determined Warrington disturbed 19,780 square feet of freshwater wetlands on the front property and 4300 square feet on the riparian buffer.

Relying on Sekoni's inspection notes and records, Todash also determined Warrington cleared and filled approximately 8720 square feet of wetlands and an additional 14,000 square feet of

wetlands transition area in the rear property. Todash further determined Warrington constructed a bridge across the tributary that disturbed an additional 360 square feet within the riparian buffer.

In January 2012, the NJDEP issued an Administrative Order and Notice of Civil Administrative Penalty Assessment (AONOCAPA) asserting Warrington conducted activities on his property without first obtaining permits in violation of the FWPA and the FHACA. The AONOCAPA alleged Warrington violated the FWPA by: clearing vegetation and placing fill material and grading to create an access road in the front property "resulting in the disturbance of approximately 8720 square feet of freshwater wetlands" without a permit; clearing vegetation and placing fill material and grading in the front property "to create a lawn area and access road resulting in the disturbance of approximately 19,780 square feet of freshwater wetlands" without the required permits; clearing vegetation and constructing a "30 by 40 foot concrete pad, resulting in the disturbance of approximately 14,000 square feet of freshwater wetlands transition area" in the rear property without a permit; and erecting a "30 by 40 foot pole barn/garage structure" on the concrete pad in 2011.

The AONOCAPA also stated Warrington violated the FHACA in 2008 by constructing a bridge over the Still Run tributary

"impacting approximately 360 square feet" of a "flood hazard area" without a permit, and in 2010 by creating a lawn area and access road resulting in the disturbance of "approximately 4300 square feet of the Riparian Buffer associated with a tributary of Still Run."

The AONOCAPA identified a total wetlands disturbance of 28,500 square feet, a wetlands transition area disturbance of 14,000 square feet, and a flood hazard area/riparian zone disturbance of 4660 square feet.

The AONOCAPA required that Warrington "immediately cease all regulated activities" and submit a restoration plan within twenty days. The DEP also imposed a $17,000 administrative penalty. Warrington requested a hearing, and the matter was transferred to an administrative law judge (ALJ) for a hearing.

At the hearing before the ALJ, Sekoni did not testify because he was no longer employed by the NJDEP,[2] but his field notes from his 2008 inspection of the rear property, describing his soil borings, observations of the rear property, calculations of the size of the total freshwater wetlands disturbance (8720 square feet), freshwater wetlands transition disturbance (14,000 square

---

[2] It was represented by NJDEP counsel that Sekoni had also relocated to Texas.

feet) and flood hazard area disturbance (360 square feet),[3] and including drawings of the property and disturbed areas, were admitted in evidence.

Todash testified concerning his review of Sekoni's notes, aerial photographs of the property and his inspections of the property in June 2010 prior to the issuance of the NOV. He also testified concerning his subsequent inspection of the property in July 2011, and the soil borings and property inspection he conducted the following month. He explained that he compared the soil borings to the colors on a Munsell Soil Color Chart (Munsell Chart),[4] made other observations of the soil and drainage patterns, considered the dominant vegetation and aerial photographs showing the front property had been cleared, and determined the front property was comprised of wetlands and wetlands transition areas that Warrington cleared and filled. Todash also explained that

_____

[3] Although the record refers to a 360 square foot disturbance attributable to the bridge construction, Sekoni's notes list a 306 square foot disturbance. The NJDEP ultimately determined Warrington did not violate the FHACA because he did not construct the bridge. We therefore need not address or resolve the conflict between the sizes of the alleged disturbance areas.

[4] The Federal Manual for Identifying and Delineating Jurisdictional Wetlands, 11-12 (1989) provides for the use of the Munsell Soil Color Chart to test and compare soil samples.

the fifty-foot riparian buffer had been cleared, resulting in a total flood hazard area disturbance of 4300 square feet.[5]

NJDEP senior geologist and Land Use Permitting Section Officer Brett Kosowski testified he visited the property in June 2010 and, based on his "best professional judgment," determined there was fill in the front property because it was at an elevation different than the surrounding undisturbed areas and its surface had what appeared to be recently planted grass. He also testified he asked Smith from Key Engineering to prepare a pre-permit application document summarizing the "viability of a permit."

Kosowski identified a September 27, 2010 letter from Smith, which included the Wetland Boundary Survey. Warrington's counsel objected to the admission of the letter and survey, contending they were inadmissible because they were provided as part of settlement negotiations. The NJDEP argued they were provided pursuant to the pre-application process for the requisite permits, and constituted admissions on Warrington's behalf by his authorized agent. The court admitted the letter, which included a statement that Warrington placed fill on the property, because

---

[5]   Todash calculated the 4300 square foot flood hazard area disturbance by multiplying the fifty-foot width of the riparian buffer by the eighty-six-foot length of the tributary across Warrington's property.

the letter did not identify the location of the fill and Warrington did not dispute he filled in areas of the property.

The court reserved decision as to whether the survey, which included statements concerning the placement of fill and the location of wetlands and wetlands transition areas, constituted an admission by Warrington. The NJDEP later moved the survey into evidence and, without any objection from Warrington, the ALJ admitted it in evidence. In the ALJ's final opinion and recommendation, he addressed the admissibility of the survey, and concluded the survey was prepared by Smith as Warrington's agent and constituted an admission on Warrington's behalf. The ALJ rejected the notion the survey was submitted to the NJDEP in furtherance of any settlement negotiations.

The NJDEP's final witness, Barbara Baus, testified concerning the agency's calculation of the administrative penalty. She explained there was a miscalculation of the $17,000 penalty assessed in the AONOCAPA, and that the correct penalty was $16,000.

Warrington presented Gary Brown, a licensed site remediation professional, who was qualified as an expert in wetlands and delineation of wetlands. He testified that one of his employees, Ahren Ricker, conducted tests of the soil on the property and took photographs in September 2014. Ricker did not compare any soil on the property to the Munsell Chart, but instead used open test

pits to assess the presence of wetlands and wetlands transition areas. According to Brown, the test pits showed no wetlands on the property except in the areas adjacent to the tributary. He based his opinion on the lack of standing water in the test pits, the water level in the soil and the surrounding vegetation.

Warrington also testified. He explained the bridge over the tributary was on the property when he purchased it in 1999. He explained that he only replaced the decking on the bridge. He admitted he cleared the property to make his yard "a little bigger," by "cut[ting] down all the vegetation in 2000" and building the road. He also acknowledged cutting down approximately twenty trees in the rear property, and installing the concrete pad. He denied seeing any muddy areas, or standing water, on any of the areas he disturbed.

The ALJ issued a detailed and comprehensive written decision. He observed that there was no dispute Warrington disturbed the areas of the property alleged by the NJDEP and that the issue presented was whether the NJDEP proved the affected areas constituted wetlands, wetlands transition areas and flood hazard areas. The ALJ determined the front property consisted of wetlands and wetlands transition areas based on Todash's testimony, which the judge found more credible than Brown's testimony.

The ALJ also determined the NJDEP proved the disturbed areas in the rear property were wetlands and wetlands transition areas. He relied on portions of Sekoni's notes and records, finding they were admissible as business records, N.J.R.E. 803(6), and public records, N.J.R.E. 803(8). He found those portions of Sekoni's notes setting forth his determination the rear property consisted of wetlands and wetlands transition areas were hearsay, but he found independent admissible evidence corroborating the determination was provided in the September 21, 2010 Wetland Boundary Survey Smith submitted to the NJDEP. The ALJ concluded the survey constituted an admission by Warrington because Smith was Warrington's agent, the survey was submitted in furtherance of the permit process and it was not provided as part of any settlement negotiations.

Last, the ALJ determined the NJDEP established Warrington violated the FHACA by disturbing the riparian buffer and constructing a bridge across the tributary. He rejected Warrington's post-trial contention that the tributary was exempt from the FHACA's coverage because it was a manmade canal. See N.J.A.C. 7:13-2.2. The ALJ determined Warrington waived the argument because it was not raised during pretrial discovery or asserted during trial, and was asserted for the first time in Warrington's post-trial submissions.

A-1173-16T1

Warrington filed exceptions to the ALJ's decision.  In its final decision, the NJDEP accepted in part and rejected in part the ALJ's findings and recommendation.  The NJDEP found the front property and rear property consisted of wetlands and wetlands transition areas, and that Warrington disturbed them by removing vegetation, installing fill, and constructing the road, concrete pad and barn.  The NJDEP also accepted the ALJ's finding Warrington disturbed the 4300 square foot riparian buffer, thereby violating the FHACA.  The NJDEP rejected the ALJ's finding Warrington disturbed 360 square feet of the riparian buffer by constructing the bridge because it accepted Warrington's testimony the bridge was present when he purchased the property in 1999.  The NJDEP thereby reduced the recommended administrative penalty to $14,000. Warrington appealed.

On appeal, Warrington presents the following arguments for our consideration:

> POINT ONE
>
> THE TRIAL JUDGE IMPROPERLY CONSIDERED THE NOTES AND OTHER DOCUMENTS OF . . . SEKONI, WHO DID NOT TESTIFY. MOREOVER, EVEN IF SEKONI'S NOTES WERE SOMEHOW PROPERLY ADMITTED, THEY WERE INSUFFICIENT TO ESTABLISH THE ALLEGED VIOLATIONS INVOLVING THE GARAGE AREA[.]

POINT TWO

THE KEY ENGINEERS DOCUMENTS WERE NON-EVIDENTIAL SETTLEMENT COMMUNICATIONS AND PROPOSALS OF ADJUSTMENT[.]

POINT THREE

THE NJDEP FAILED TO SATISFY ITS BURDEN OF PROOF THAT . . . WARRINGTON DISTURBED 19,780 SQUARE FEET OF FRESHWATER WETLANDS IN THE FRONT OF THE PROPERTY OR 14,220 SQUARE FEET OF WETLANDS TRANSITION AREA IN THE BACK OF THE PROPERTY BECAUSE MR. BROWN WAS NOT REQUIRED TO UTILIZE A MUNSELL CHART WHEN CONDUCTING HIS TESTING, AND THE NJDEP FAILED TO SHOW THAT ITS TESTING WAS EVEN CONDUCTED ON THE PROPERTY[.]

POINT FOUR

THE FHACA AND ITS ACCOMPANYING REGULATIONS DO NOT APPLY TO THIS MATTER BECAUSE THE WATERWAY IN QUESTION IS A "MANMADE CANAL," THEREBY PLACING IT OUTSIDE THE SCOPE OF THE FHACA[.]

II.

Our scope of review of agency decisions is limited. We defer to the agency's ultimate determination unless it is arbitrary, capricious or unreasonable, violates legislative policies expressed or implied in the enabling legislation, or the findings on which the decision was based were not supported by substantial, credible evidence. In re Virtua-West Jersey Hosp., 194 N.J. 413, 422 (2008). When an error in the agency's fact finding is alleged, our review is limited to assessing whether sufficient credible evidence exists in the record to support those findings. Close

v. Kordulak Bros., 44 N.J. 589, 599 (1965). This review must encompass "the proofs as a whole," and must take into account "the agency's expertise where such expertise is a pertinent factor." Ibid. "The burden of demonstrating that the agency's action was arbitrary, capricious or unreasonable rests upon the [party] challenging the administrative action." In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006). Warrington fails to meet that burden here.

### A.

Warrington first contends the ALJ and the NJDEP erred by basing their conclusions he disturbed wetlands and wetlands transition areas in the rear property on Sekoni's determination, as reflected in his field notes, that the disturbed portions of the rear property were comprised of wetlands and wetlands transition areas. Warrington argues the notes constitute hearsay, which was not corroborated by other competent evidence as required under the residuum rule, N.J.A.C. 1:1-15.5(b). We are not persuaded.

Subject to a judge's discretion, N.J.A.C. 1:1-15.5(a) permits the admission of hearsay in administrative proceedings. ZRB, LLC v. N.J. Dep't of Envtl. Prot., Land Use Regulation, 403 N.J. Super. 531, 557 (App. Div. 2008). Nevertheless, "some legally competent evidence must exist to support each ultimate finding of fact to

16

an extent sufficient to provide assurances of reliability and to avoid the fact or appearance of arbitrariness." N.J.A.C. 1:1-15(b). "Under the residuum rule, N.J.A.C. 1:1-15.5.5(b), hearsay is admissible in administrative hearings to corroborate other, non-hearsay evidence." Hemsey v. Bd. of Trs., Police & Firemen's Retirement Sys., 393 N.J. Super. 524, 534 (App. Div. 2007), rev'd in part on other grounds, 198 N.J. 215 (2009).

Sekoni's notes included his determination the disturbed portions of the rear property were comprised of wetlands and wetlands transition areas. The ALJ correctly concluded the determination constituted hearsay,[6] see N.J.R.E. 801, but properly

---

[6] The ALJ found the portions of Sekoni's notes reflecting his objective findings were admissible under the business records, N.J.R.E. 803(c)(6), and public records, N.J.R.E. 803(8), exceptions to the hearsay rule, N.J.R.E. 801. Warrington does not challenge those determinations on appeal. The ALJ, however, also determined that Sekoni's opinions, including his opinion the disturbed areas of the rear property were comprised of wetlands and wetlands transition areas constituted inadmissible hearsay. See N.J.R.E. 805 (providing that a statement "within the scope of an exception" to the rule against hearsay is inadmissible where it includes a hearsay statement not falling within any hearsay exception). "[W]hen 'statements are hearsay-within-hearsay, each level . . . requires a separate basis for admission into evidence.'" Konop v. Rosen, 425 N.J. Super. 391, 402 (App. Div. 2012) (citation omitted). Moreover, under N.J.R.E. 808, where an otherwise admissible hearsay statement includes embedded hearsay in the form of an expert opinion, the expert opinion "shall be excluded if the declarant has not been produced as a witness unless . . . the circumstances involved in rendering the opinion . . . tend to establish its trustworthiness." N.J.R.E. 808; see also James v. Ruiz, 440 N.J. Super. 45, 62 (App. Div. 2015) (noting

admitted the notes because hearsay is admissible in a contested case, N.J.A.C. 1:1-15.5(a); ZRB, LLC, 403 N.J. Super. at 557.

Warrington contends, however, that Sekoni's determination was not sufficiently corroborated by competent evidence as required under the residuum rule. More particularly, Warrington contends the ALJ erred by finding Sekoni's determination was corroborated by the Key Engineering survey because the ALJ erroneously concluded the survey constituted an admission made on Warrington's behalf, and the survey was otherwise inadmissible under N.J.A.C. 1:1-15.10 because it was submitted to the NJDEP in furtherance of settlement negotiations.

We find no basis to reverse the ALJ's acceptance of the survey as Warrington's admission, and rejection of Warrington's contention the survey was inadmissible under N.J.A.C. 1:1-15.10. Generally, the "admission or exclusion of proffered evidence is within the discretion of the trial judge whose ruling is not disturbed unless there is a clear abuse of discretion." Dinter v. Sears, Roebuck & Co., 252 N.J. Super. 84, 92 (App. Div. 1991). An abuse of discretion "arises when a decision is 'made without rational explanation, inexplicably departed from established

that the "import of N.J.R.E. 808 . . . is that some expert opinions contained in business records or other sources are admissible, but others are not.").

policies, or rested on an impermissible basis.'"  Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002) (citation omitted).  We find no abuse of discretion here.

"Settlement of litigation ranks high in our public policy." Nolan v. Lee Ho, 120 N.J. 465, 472 (1990).  N.J.A.C. 1:1-15.10 provides that "[o]ffers of settlement, proposals of adjustment and proposed stipulations shall not constitute an admission and shall not be admissible" in administrative hearings.  In Gannett N.J. Partners, LP v. Cty. of Middlesex, 379 N.J. Super. 205, 221 (App. Div. 2005), we construed N.J.R.E. 408, which provides that "offers of compromise or any payment in settlement of a related claim, shall not be admissible to prove liability for, or invalidity of, or amount of the disputed claim."  We determined that a communication is not a "settlement communication" where the communication "does not contain any 'offer[] of compromise' or other statement related to [a] settlement."  Ibid.

As noted, Sekoni issued the initial FNOV on May 13, 2008, and the next day Warrington advised the NJDEP he intended to obtain permits for the disturbance of his property.  He testified he then retained Key Engineering in support of his efforts to obtain the permits.  In rejecting Warrington's contention the survey constituted an offer of settlement or compromise under N.J.A.C. 1:1-15.10, the ALJ found Warrington

19

decided to seek to obtain a permit or permits to regularize the legal status of his property, that is, he determined to follow the normal application process and submit to the [NJ]DEP whatever was needed to obtain the appropriate permits. In the normal course of that application process, his authorized agent decided to first prepare a Wetland Boundary Survey, and then to revise it to take into account whatever he believed was proper to secure the permit(s), which no doubt might include consideration of [NJ]DEP's understanding as to what the condition of the property was and had previously been. There appears to be nothing at all unusual about the preparation of a revision of the original survey. At the time of its submission, no claim was made that is was confidential, that it was prepared as an offer of settlement or compromise . . . . There is no suggestion here that Warrington, acting through an authorized agent in a manner that could then be considered as a statement by Warrington himself, was by his communication offering a settlement or compromise. There is no evidence of attorney involvement here, [and] no suggestion of any ongoing "negotiation."

We defer to the ALJ and the NJDEP's findings of fact where, as here, they are supported by substantial credible evidence. In re Taylor, 158 N.J. 644, 656 (1999). The findings support the NJDEP's determination the survey was submitted by Warrington's authorized agent in furtherance of Warrington's efforts to obtain permits, and not as an offer of compromise or as part of any settlement negotiations. The ALJ did not abuse its discretion by

20

rejecting Warrington's objection to admission of the survey under N.J.A.C. 1:1-15.10.[7]

In sum, the record supports the ALJ's determination the survey was submitted in furtherance of the processing of Warrington's permit requests, and not as an offer of settlement or compromise subject to the strictures of N.J.A.C. 1:1-15.10. The ALJ did not err by admitting the survey in evidence, concluding it constituted an admission by Warrington through his authorized agent, and determining it provided competent evidence corroborating Sekoni's determination defendant disturbed wetlands and wetlands transition areas on the rear property under the residuum rule. See Ruroede v. Borough of Hasbrouck Heights, 214 N.J. 338, 361-62 (2013) (noting the residuum rule was not violated where inadmissible hearsay evidence was supported by hearsay evidence "properly admitted under N.J.R.E. 803(b)(1)"). We affirm the NJDEP's order finding Warrington violated the FWPA by disturbing wetlands and wetlands transition areas in the rear property.

---

[7] We note that the ALJ erred by suggesting, in reference to the submission of the survey, that Warrington first decided to obtain permits following the January 2012 AONOCAPA. Warrington first advised the NJDEP he intended to obtain permits two years earlier on the day following Sekoni's May 13, 2008 FNOV, and Kosowski testified he requested that Key Engineering a provide a pre-permit application guidance document summarizing the "viability of a permit." The survey is dated September 21, 2010 and submitted by letter dated September 27, 2010, sixteen months before the AONOCAPA.

B.

Warrington also argues there was insufficient evidence supporting the NJDEP's determination the front property was comprised of wetlands and wetlands transition areas. Warrington contends the NJDEP erred by finding Todash's testimony credible, and rejecting Brown's testimony that the front property contained neither wetlands nor wetlands transition areas.

Warrington's argument is without merit sufficient to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). We add only that Warrington does not dispute Todash's testimony, if accepted as credible, established the disturbed portions of the front property consisted of wetlands and wetlands transition areas.

We give "due regard" to the ability of the factfinder who heard the witnesses to judge credibility, Close, 44 N.J. at 599, and defer to credibility findings "that are often influenced by matters such as observations of the character and demeanor of witnesses and common human experience that are not transmitted by the record." State v. Locurto, 157 N.J. 463, 474 (1999). More specifically, "the choice of accepting or rejecting the testimony of witnesses rests with the administrative agency, and where such choice is reasonably made, it is conclusive on appeal." Renan Realty Corp. v. State, Dep't of Cmty. Affairs, Bureau of Hous. Inspection, 182 N.J. Super 415, 421 (App. Div. 1981).

22

We defer to the ALJ's determinations that Todash provided credible testimony and Brown did not, and affirm the NJDEP's order finding Warrington violated the FWPA because Todash's testimony established Warrington disturbed wetlands and wetlands transition areas in the front property.

## C.

Warrington last contends the NJDEP erred by finding he violated the FHACA by disturbing the fifty-foot-wide riparian buffer. Warrington contends the tributary is actually a manmade canal and therefore exempt from the FHACA's coverage under N.J.A.C. 7:13-2.2(a)(1), which provides that "[a]ll waters in New Jersey are regulated under this chapter except for . . . any manmade canal." In support of his position, Warrington relies on Brown's testimony the alleged tributary is a manmade waterway constructed for purposes of irrigation during the property's prior usage as farmland.

The ALJ did not address the merits of Warrington's contention because it was not asserted in any of the pretrial discovery requests for the identification of Warrington's defenses, and was not argued during trial. The ALJ determined Warrington's failure to raise the defense in his pretrial discovery responses unfairly prejudiced the NJDEP.

In its final decision, the NJDEP did not reject Warrington's claim on the grounds relied upon by the ALJ, and instead addressed the merits. The NJDEP noted although the term canal is not defined in N.J.A.C. 7:13-2.2(a)(1), it is "understood to be a manmade feature that does not have a distinct flood hazard area or riparian zone, and which is often maintained by a government agency." See 39 N.J.R. 4595 (Nov. 5, 2007). The NJDEP noted Todash's testimony the tributary is a regulated water with a fifty-foot riparian buffer and found Brown's testimony was insufficient to establish the tributary was manmade within the meaning of N.J.A.C. 7:13-2.2(a)(1).

Again, the NJDEP's determination is supported by sufficient credible evidence, and we defer to its determination accepting Todash's testimony and not Brown's. We discern no abuse of discretion in the NJDEP's determination there was insufficient evidence establishing the tributary was an exempt manmade canal under N.J.A.C. 7:13-2.2(a)(1). Warrington's contention the NJDEP bore the burden of proving the tributary was not an exempt manmade canal under N.J.A.C. 7:13-2.2(a)(1) is without merit sufficient to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

24                                                      A-1173-16T1