NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0250-14T3

MARK LAGERKVIST,

    Plaintiff-Appellant,

v.

OFFICE OF THE GOVERNOR OF THE
STATE OF NEW JERSEY and
JAVIER DIAZ, LEGAL SPECIALIST/
RECORDS CUSTODIAN,

    Defendants-Respondents.

> **APPROVED FOR PUBLICATION**
>
> **December 17, 2015**
>
> **APPELLATE DIVISION**

Argued October 15, 2015 — Decided December 17, 2015

Before Judges Alvarez, Ostrer, and Haas.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-821-14.

Donald M. Doherty, Jr., argued the cause for appellant.

Todd A. Wigder, Deputy Attorney General, argued the cause for respondent (John J. Hoffman, Acting Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Mr. Wigder, on the brief).

The opinion of the court was delivered by

ALVAREZ, P.J.A.D.

This is an appeal by Mark Lagerkvist, a journalist, from the July 29, 2014 Law Division order dismissing his Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, denial of access complaint.[1] We affirm, concluding that the records custodian's initial refusal, and silence in the face of a second request, satisfied the mandates of the statute. We also conclude that Lagerkvist's inquiry fell outside OPRA's scope because it called for the custodian to conduct research and provide information, not records.

Lagerkvist's January 15, 2014 records request sought to have defendant Office of the Governor of the State of New Jersey provide him with:

> Copies of all available documentation for out-of-state travel from 2012 to present by [Governor] Chris Christie and/or members of his senior staff to attend or participate in third-party funded events. This request specifically includes documentation of the payment arrangement on the third-party organization's letterhead, as required by Treasury circular 12-14-OMB.[2] This request encompasses any event programs, schedules[,] or other records disclosing the particulars of the events, the role of [Governor] Christie and/or members of his senior staff

---

[1] Lagerkvist's notice of appeal and brief only address the issue in the context of OPRA although the complaint sought relief under the common law as well.

[2] Treasury circular 12-14-OMB, which the State contends does not apply to the Governor and his staff, directs government employees to maintain travel records for third-party funded events.

at the events[,] and the travel arrangements including itineraries. It also includes any emails, internal or external, regarding the arrangements and events. If any expenses were charged to the state, this request includes copies of all travel vouchers submitted by or on behalf of [Governor] Christie and/or his senior staff, along with copies of all original receipts.

After obtaining extensions of time in which to respond, legal specialist/records custodian Javier Diaz, also a defendant, denied Lagerkvist's request stating that it was "unclear, and . . . therefore invalid under OPRA." Immediately after that phrase, the written denial quoted Gannett New Jersey Partners, L.P. v. County of Middlesex: "OPRA requires a party requesting access to a public record to specifically describe the document sought." 379 N.J. Super. 205, 212 (App. Div. 2005). The denial then quoted from Bent v. Township of Stafford Police Department, that "a proper request" was one which identified the sought-after documents "with reasonable clarity." 381 N.J. Super. 30, 37 (App. Div. 2005).

A few days later, Lagerkvist emailed Diaz, asserting that he had been "specific and not 'unclear.'" He said:

· The request is for specific records that are required to be created and maintained by Treasury circular 12-14-OMB.

· The request covers a specific time period, 2012 to present.

- The request is for documents regarding the third-party funded travel of specific public officials — i.e. [Governor] Christie and members of his senior staff. The current senior staff is listed on the governor's official web site at http://www.state.nj.us/governor/admin/staff/. Despite turnover, the governor's office should be able to easily identify former senior staff.

Lagerkvist also said "[i]f you believe there is any technicality that causes [this request] to be unclear, please identify it and bring it to my attention immediately. Otherwise, I will conclude your denial violates OPRA."

Defendants did not reply, triggering Lagerkvist's April 11, 2014 summary action to compel production of the third-party funded travel records. See R. 4:67. On July 29, after hearing oral argument, the Law Division judge opined that the request greatly exceeded the scope of a "routine ministerial action of a custodian[,]" going beyond the boundaries of OPRA or the common law. It imposed on the custodian the obligation to do significantly more than merely isolate and copy identified records.

The judge also found no error in the custodian's use, in the context of the written denial, of the term "unclear" as opposed to "overbroad." By referring to precedents that defined unclear and overbroad requests as outside OPRA's ambit, the custodian adequately explained his reasons. Thus, any objection

to Diaz's use of only the word "unclear" was merely a "semantic argument." The judge further observed that the law does not place the onus on the governmental agency "to recast the request" so it could be granted. She dismissed the complaint with prejudice.

On appeal, Lagerkvist reiterates that when public access issues are litigated, the burden rests upon the custodian to demonstrate that denial of access is warranted. From that premise, he argues that the custodian's burden should be expanded to include explaining the reasons for the denial of access with such specificity that the requestor can modify the inquiry in order to achieve success. Additionally, Lagerkvist contends that his request was not unclear and that therefore the custodian's response was improper.

The overarching principle in the statutory scheme is that "all government records shall be subject to public access unless exempt." N.J.S.A. 47:1A-1. For this reason, the burden is placed on the custodian, once proceedings to compel disclosure are initiated, to prove that denial of access is "authorized." N.J.S.A. 47:1A-6. Appellate review of questions regarding applicability of OPRA is de novo. K.L. v. Evesham Twp. Bd. of Educ., 423 N.J. Super. 337, 349 (App. Div. 2011) (citing O'Shea

v. Twp. of W. Milford, 410 N.J. Super. 371, 379 (App. Div. 2009)), certif. denied, 210 N.J. 108 (2012).

As a threshold matter, we concur with the Law Division judge that Diaz's use of the word "unclear," as opposed to "overbroad," is a matter of semantics which had no effect on the issue of whether the request was properly framed and the denial lawful. A custodian must provide a "'specific basis' for the denial of access," and that occurred here. Gannett, supra, 379 N.J. Super. at 215 (quoting N.J.S.A. 47:1A-5(g)). The language immediately following the use of "unclear" unequivocally explained that the request was also overbroad.

Additionally, Lagerkvist's second request was no more than a rephrasing of the first. Although Lagerkvist purported to make the second request narrower, in truth nothing in it changed from the initial inquiry. The custodian had already explained that the substantively identical initial inquiry was unclear and overbroad. Indeed, the statute states that silence will "be deemed a denial . . . ." N.J.S.A. 47:1A-5(i).

N.J.S.A. 47:1A-5(g) imposes upon the custodian the responsibility to "indicate the specific basis" for the denial of access. Having initially responded in a fashion that satisfied the statute, nothing further was required of the custodian when faced with the same demand. See N.J.S.A.

47:1A-5(i). His silence was correctly interpreted as a denial of access.

Lagerkvist further seeks to expand a custodian's duty to include the obligation to work out a "reasonable solution" with the requestor in circumstances beyond those found in the statutory scheme. N.J.S.A. 47:1A-5(g) states that if a request would "substantially disrupt agency operations, the custodian may deny access to the record after attempting to reach a reasonable solution with the requestor that accommodates the interests of the requestor and agency." Lagerkvist contends this statutory duty, imposed when the time involved in complying with the search is onerous, should include this scenario. We do not agree that such an expansion is warranted.

Efforts at working out an agreement between the requestor and custodian are necessary when the governmental entity's objection stems from the potential for "substantial disrup[tion] [to] agency operations." See N.J.S.A. 47:1A-5(g); see also Mason v. City of Hoboken, 196 N.J. 51, 65 (2008) ("Various provisions in the statute are designed to foster cooperation among requestors and agencies . . . . [f]or example, if a request 'would substantially disrupt agency operations . . . .'"). This would occur, for example, where a request is problematic because of the number of documents sought, or because of

duplication difficulties presented by the inherent nature of the items requested.

In American Civil Liberties Union of New Jersey v. New Jersey Division of Criminal Justice, 435 N.J. Super. 533, 541 (App. Div. 2014), this court held that there is "no legal basis to expand the custodian's role beyond what the Legislature specifically described in N.J.S.A. 47:1A-5(g)." Although in that case, we made the observation in the context of an agency claim that it had the right to exercise discretion in redacting records, the language is equally apt here.

In this case, no efforts at accommodation were necessary because the custodian's objection was that the request was unclear and overbroad, not that the process of responding would excessively burden the agency or disrupt day-to-day operations. "While OPRA provides [a] . . . means of access to government documents not otherwise exempted from its reach, it is not intended as a research tool litigants may use to force government officials to identify and siphon useful information." MAG Entm't, LLC v. Div. of Alcoholic Beverage Control, 375 N.J. Super. 534, 546 (App. Div. 2005). That is precisely the nature of Lagerkvist's inquiry here.

Lagerkvist's request sought travel records and related documents, such as emails and correspondence, from "2012 to

present" for an unknown number of persons for an unknown number of events. See id. at 540 ("MAG's request required the custodian to collect, evaluate, and compile information from each file and amounted, in effect, to an improper demand for research."). A proper request would ask for specific documents regarding a third-party funded event occurring on a specific date, naming those who participated —— such an inquiry would fall within OPRA's scope.

Nothing in OPRA requires what Lagerkvist sought: that the custodian "conduct research among its records . . . and correlate data from various government records in the custodian's possession." Id. at 546-47 (internal citation omitted). A requestor is obliged to identify the documents sought with some particularity, thus enabling government to maintain transparency while completing necessary day-to-day functions. Bent, supra, 381 N.J. Super. at 37.

The custodian in this case would have had to make a preliminary determination as to which travel records correlated to the governor and to his senior officials, past and present, over a span of years. The custodian would then have had to attempt to single out those which were third-party funded events. Next, he would have had to collect all documents corresponding to those events and search to ensure he had

accumulated everything, including both paper and electronic correspondence. OPRA does not convert a custodian into a researcher, and that would have been the effect of Lagerkvist's request.

This was no "routine search of files pertaining to a very narrowly specified topic." Burke v. Brandes, 429 N.J. Super. 169, 177 (App. Div. 2012). Lagerkvist's inquiry clearly exceeded the limits of OPRA. The denial of access was proper.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0250-14T3