**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1204-18T1

LAWYERS COMMITTEE FOR
9/11 INQUIRY, a PA Nonprofit
Corporation,

    Plaintiff-Appellant,

v.

NEW JERSEY STATE POLICE
and DSFC DAVID ROBBINS,
in his official capacity as
Custodian of Records,

    Defendants-Respondents.

_____

Argued December 17, 2019 – Decided January 8, 2020

Before Judges Fisher, Gilson and Rose.

On appeal from the Superior Court of New Jersey,
Law Division, Mercer County, Docket No. L-0405-18.

David R. Meiswinkle argued the cause for appellant.

Francis A. Raso, Deputy Attorney General, argued the
cause for respondents (Gurbir S. Grewal, Attorney
General, attorney; Jane C. Shuster, Assistant Attorney
General, of counsel; Francis A. Raso, on the brief).

PER CURIAM

Plaintiff Lawyers Committee for 9/11 Inquiry, appeals a Law Division order dismissing its complaint that sought the production of documents from defendant New Jersey State Police (NJSP) pursuant to the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, and the common law right of public access. Plaintiff also challenges that portion of the order, which memorializes the NJSP's agreement to provide a redacted logbook entry under the common law, and the court's consequential denial of counsel fees. Because the trial court's decision is supported by credible evidence in the record, we affirm.

I.

This appeal has it genesis in a motor vehicle stop of a suspicious white Chevrolet van during the afternoon of September 11, 2001 in East Rutherford. Plaintiff claimed police stopped the van following a Union City resident's report that three men "were dancing and high fiving" on the van's roof while filming and photographing the World Trade Center terrorist attack. Plaintiff further claimed a K-9 unit alerted for the presence of explosive residue recovered from the van.

We describe in some detail the nature of plaintiff's requests and defendants' searches for the responsive records to give context to the trial court's

2

conclusion. In December 2017, plaintiff submitted to the NJSP two related OPRA requests, each referencing and attaching screenshots of declassified Federal Bureau of Investigation records. One request sought "seventy-six 8 x 10 black and white photographs along with the film negatives" pertaining to the investigation of the van, and "all records related to the film roll, film type, camera make/model, bag, and/or other sources of the originals, whether digital or not." According to the September 13, 2001 record attached to plaintiff's request, the FBI had received triplicate copies of those seventy-six photographs from the NJSP Forensic Photography Unit in West Trenton.

Plaintiff's second request referenced another FBI record, which listed property apparently recovered from the same van, including a fabric sample and blanket samples "for explosive residue." Plaintiff requested "all records, in the original, or better format and resolution, related to, or which reference[d]" those samples, "including but not limited to laboratory analyses for explosive residue."

The NJSP, through its records custodian, defendant Detective Sergeant First Class (DSFC) David Robbins, denied both requests, stating the NJSP "does not maintain responsive records to [plaintiff's] request." One month later,

3

plaintiff commenced this summary action against the NJSP and Robbins pursuant to Rule 4:67-1.

Defendants filed an opposing brief supported by the certifications of Robbins; DSFC Kenneth Wise, who was assigned to the Crime Scene Investigation (CSI) North Unit; and retired Lieutenant Jim Molinaro, who had been employed as a DSFC with the CSI Central Unit on 9/11. The certifications explained the steps undertaken by Robbins to comply with plaintiff's requests.

In essence, Robbins contacted the lieutenant assigned to the NJSP Forensic Photography Unit, who then contacted Wise and learned, "although the CSI North, Central and South Units dispatched representatives to assist the . . . [FBI] PENTBOMB Task Force in the wake of September 11, 2001, the NJSP did not maintain any reports or photos from its time assisting the FBI Task Force." Wise certified that he received that information from Molinaro who, in turn, swore that he was the DSFC in charge of the CSI Central Unit on 9/11. According to Molinaro, the CSI detectives assisted the FBI's Evidence Response Team, but "[a]ny evidence obtained from scene processing, including fingerprints or photographs, was taken by and documented by the FBI. No copies of this evidence were retained by [the] NJSP, and no independent reports were generated by [the] NJSP."

A-1204-18T1

Plaintiff argued the certifications of Robbins, Wise and Molinaro were inaccurate, misleading and "not sufficiently explanatory" because they referenced "the wrong set of events" or the "wrong set of resulting records." On the return date of the order to show cause the trial court reserved decision, ordering the NJSP to provide "enhanced certifications" to enable the court to properly determine whether defendants conducted a reasonable search in response to plaintiff's requests.[1]

Thereafter, defendant submitted certifications of two ranking officers assigned to NJSP's Open Public Records Unit, detailing the efforts they made to physically search for the records at issue, and "the methods of photographic and evidence storage related to the September 11, 2001 investigation . . . ." Following his consultation with the commanding officer of NJSP's Forensic and Technical Services Section, Lieutenant Thomas J. Cavallo learned that if responsive photographs or reports existed, they would be housed in the NJSP's Totowa or Hamilton headquarters.

---

[1] The order states the court's reasons were placed on the record that date; the parties did not provide a transcript of the hearing on appeal.

A-1204-18T1

Cavallo searched "the entire Photography Unit" of the Hamilton headquarters, but did not find any photographs or reports related to the 9/11 investigation.[2] But Cavallo located "a handwritten logbook for the year 2001 . . . in the Archive room." According to Cavallo, the logbook stated:

- "Senior Forensic Photographer Theodore Wack reported to [NJSP] Headquarters September 12, 2001 to process 35 millimeter film canisters provide by two FBI Special Agents[]";

- "the film was developed on September 12, 2001, and contact sheets and prints were completed on September 13, 2001[]";

- "part of the job was received by two FBI Special Agents on September 12, 2001, and additional material [was received] on September 13, 2001[]"; and

- "[t]he logbook did not specify the subject matter, only '4 sealed confiscated (envelopes) and 10 rolls.'"

Plaintiff argued, at the very least, the logbook was relevant and responsive to plaintiff's OPRA request and should have been located and produced to

---

[2] Defendants also provided the certification of Sergeant Kristina Pados, who searched three records storage areas, including the CSI North Office in the Totowa headquarters. Her search did not reveal any records prior to 2006.

plaintiff before litigation was commenced. Plaintiff sought attorney's fees under the OPRA.

Following a case management conference, the trial court again reserved decision, pending further submissions by defendants.[3] The court ordered defendants to ask Wack whether he recalled the procedure employed when working with the FBI and to determine "whether some or all of the [logbook] entries on the page with relevant information may be produced to [p]laintiff."

Defendants submitted for in-camera review an unredacted version of the logbook page, including the entry at issue. The page contains about fifty handwritten entries, with fields for: case number and date, case name, crime, requestor name and unit, evidence description, type of request, processed by, and processing date. Entry #1766 lists "WTC Bombing" as the case name; "Terrorism" as the crime; the FBI as the requestor; and "4 sealed confiscated 10" as the type of request. Wack's initials and that of an unknown person, T.P., were listed in the "processed by" column. Wack's initials are affixed to the majority of the logbook entries; T.P.'s initials only appear in a few other entries. Entry #1766 also indicated FBI agents, Secca and Kane, ultimately received the evidence.

---

[3] The parties did not produce a transcript of the telephonic conference.

A-1204-18T1

Wack certified that as Senior Forensic Photographer, he had processed forensic evidence for investigations conducted by the NJSP and other law enforcement agencies. Wack assisted the FBI following 9/11, but he had no personal interaction with the agents listed in entry #1766. Wack explained the logbook entry, verifying that his unit received "four 'sealed, confiscated' rolls of film" from the FBI and processed the film at the FBI's request. For each roll of film processed, Wack created a "contact sheet," which he described as a "positive print of all the negative images from a single roll of film." Wack did not enlarge any of the images.

According to Wack, "the Forensic Photography Unit . . . does not maintain copies of the images or film it processes upon request from an outside agency." Wack confirmed neither the originals nor copies of the contact sheets or film rolls identified in entry #1766 were maintained by the NJSP. Wack also noted the logbook entry did not specify the subject matter of the contact sheets and, as such, he had "no way of knowing whether the images contained therein pertain[ed] to the white Chevrolet van described in [p]laintiff's [v]erified [c]omplaint and/or OPRA requests." Wack had no knowledge of the requested fabric and blanket samples.

Plaintiff disputed the certifications of Wack and Cavallo, claiming they and the logbook entry were vague and confusing. Prior to the court's ultimate decision, defendants offered to provide a redacted copy of the logbook page containing entry #1766 under the common law right of access.

Following argument, the trial court issued a cogent oral decision, denying plaintiff's application under the OPRA. Referencing the multiple certifications submitted by the NJSP, the court determined the agency "made a reasonable search for the records sought by plaintiff[,]" having "looked in the most logical places where anything related to the 911 inquiry would be." Accordingly, the court denied plaintiff's application under the OPRA.

Although the court determined logbook entry #1766 was "not clearly responsive to plaintiff's request[,]" the court acknowledged defendants agreed to provide the redacted pages containing that entry. According to the court, that "concession" was "appropriate under the common law . . . ." Because plaintiff did not prevail under the OPRA, the judge denied plaintiff's request for counsel fees. This appeal followed.

On appeal, plaintiff raises nine overlapping arguments, primarily contending defendants failed to perform a reasonable search under the OPRA,

and the logbook entry was a responsive document to its first request, entitling it to counsel fees. We are unpersuaded by any of plaintiff's contentions.

II.

We commence our analysis with well-established principles, recognizing our review of the trial court's legal conclusions concerning access to public records under the OPRA and the common-law right of access is de novo. Drinker Biddle & Reath LLP v. N.J. Dep't of Law and Pub. Safety, 421 N.J. Super. 489, 497 (App. Div. 2011).

New Jersey has traditionally maintained a strong public policy that "government records shall be readily accessible for inspection, copying, or examination by the citizens of this State . . . ." N.J.S.A. 47:1A-1. The OPRA statute ensures, with exceptions, that "all government records shall be subject to public access." Ibid. Where an OPRA access to a government record is denied, the complainant may challenge the denial in Superior Court. N.J.S.A. 47:1A-6.

In OPRA cases, the records custodian has the burden to demonstrate its denial of access was authorized by law. N.J.S.A. 47:1A-6; Asbury Park Press v. Monmouth Cty., 406 N.J. Super. 1, 7 (App. Div. 2009). Generally, the records custodian is expected to perform a routine search for any available responsive records. See Lagerkvist v. Office of Governor of State, 443 N.J. Super. 230,

237 (App. Div. 2015).  But, when a party requests records that are "not in the custodian's possession," no unlawful denial of access occurs under the OPRA.  Bent v. Twp. of Stafford Police Dep't, Custodian of Records, 381 N.J. Super. 30, 38 (App. Div. 2005).  A custodian's certification may serve as the basis for a court's determination that a reasonable OPRA search was conducted, provided that the certification is based on personal knowledge.  See North Jersey Media Grp., Inc. v. State Office of the Governor, 451 N.J. Super. 282, 300-01 (App. Div. 2017).

In the present matter, the NJSP submitted six certifications, attesting to the measures undertaken by several NJSP past and present employees to locate records responsive to plaintiff's requests, all to no avail.  Plaintiff offers no proof to refute defendants' certifications.  Instead plaintiff speculates, for example, that "[s]urely Officer Wack remembers the contact sheet images that most certainly sprung to life before him."  Even if that were true, Wack confirmed that the NJSP did not "maintain[] copies or originals of the film rolls or contact sheet identified in logbook entry #1766."  Plaintiff's contention that the NJSP's months-long search for responsive records was conducted in bad faith lacks sufficient merit to warrant any further discussion in our written opinion.  R. 2:11-3(e)(1)(E).

A-1204-18T1

We turn to plaintiff's claim that the logbook entry was responsive to its request, thereby entitling it to counsel fees. Plaintiff's OPRA request for photographs was narrowly and appropriately tailored. See Burke v. Brandes, 429 N.J. Super. 169, 176 (App. Div. 2012) (recognizing a request must state a "specific subject matter that [is] clearly and reasonably described with sufficient identifying information").

Plaintiff requested copies of, and records related to, "seventy-six 8 x 10 black and white photographs along with film negatives" as described in the accompanying FBI record. The requested photographs specifically pertained to the investigation of the white van stopped by law enforcement on 9/11. Conversely, logbook entry #1766 referenced undescribed film developed by the NJSP for the FBI; the entry did not specify the subject matter of the film rolls, other than terse references to "WTC bombing" and "Terrorism." Nor do the apparent quantities of film stated in the logbook entry match the number of photographs requested by plaintiff. Wack certified he performed the task referenced in entry #1766, converting four rolls of film into contact sheets; he did not print 8 x 10 photographs.

We conclude the credible evidence in the record supports the trial court's conclusion that the logbook entry was "not clearly responsive to plaintiff's

request." See North Jersey Media Grp., Inc. v. Twp. of Lyndhurst, 441 N.J. Super. 70, 89 (App. Div. 2015), aff'd in relevant part and rev'd in part, 229 N.J. 541 (2017); see also Toll Bros., Inc. v. Twp. of W. Windsor, 173 N.J. 502, 549 (2002). Because plaintiff did not request the information stated in logbook entry #1766, we are satisfied plaintiff is not entitled to counsel fees. See N.J.S.A. 47:1A-6 ("A requestor who prevails in any [OPRA] proceeding shall be entitled to a reasonable attorney's fee."); see also Mason v. City of Hoboken, 196 N.J. 51, 76 (2008).

In Mason, our Supreme Court applied the "catalyst theory" to OPRA actions, recognizing requestors are entitled to attorney's fees "when they can demonstrate: (1) a factual causal nexus between plaintiff's litigation and the relief ultimately achieved; and (2) that the relief ultimately secured by plaintiffs had a basis in law." 196 N.J. at 76 (internal quotation marks omitted). There exists no basis in law to require NJSP to produce a document that was never requested. And there was no causal nexus between the production of the nonresponsive logbook entry and the requested photographs and records that were never located.

In reaching our conclusion, we part company with the trial court's determination that the common law does not provide for attorney's fees.

Relevant here, the Court in <u>Mason</u> recognized "the catalyst theory applies to common law suits as well." 196 N.J. at 79.

To the extent not addressed, plaintiff's remaining arguments lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1204-18T1