**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1004-21

CHRIS DOE,[1]

      Plaintiff-Appellant/
      Cross-Respondent,

v.

RUTGERS, THE STATE
UNIVERSITY OF NEW JERSEY,

      Defendant-Respondent/
      Cross-Appellant,

and

CASEY WOODS, in his official
capacity as the interim OPRA
Administrator and Records Custodian
of RUTGERS UNIVERSITY,

      Defendant-Respondent.

_____

---

[1] Chris Doe is a fictitious name used to protect the confidentiality of the school records which are the subject of this appeal. See L.R. v. Camden City Pub. Sch. Dist., 452 N.J. Super. 56, 80 (App. Div. 2017) (noting the Legislature's desire "to safeguard from public access a citizen's personal information with which it has been entrusted when disclosure thereof would violate the citizen's reasonable expectation of privacy" (quoting N.J.S.A. 47:1A-1)).

Submitted October 11, 2023 – Decided January 26, 2024

Before Judges Sumners and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-1651-18.

Jamie Mark Epstein, and Cohn Lifland Pearlman, Herrmann & Knopf LLP, attorneys for appellant/cross-respondent (Jamie Mark Epstein and Walter Michael Luers, on the brief).

McElroy, Deutsch, Mulvaney & Carpenter, LLP, attorneys for respondents/cross-appellant (Michael O'Brien Boldt, of counsel and on the briefs).

PER CURIAM

This appeal stems from parallel actions filed by plaintiff Chris Doe to obtain records from defendants, Rutgers, The State University of New Jersey, and Casey Woods, interim Open Public Records Act (OPRA) administrator and records custodian of Rutgers University, under OPRA, N.J.S.A. 47:1A-1 to -13. In a published decision, we held plaintiff was entitled to his own student disciplinary records and ordered defendants to comply with his OPRA requests. Doe v. Rutgers, State Univ. of N.J. (Doe I), 466 N.J. Super. 14, 31 (App. Div. 2021). We remanded to the trial court to determine whether plaintiff was entitled to attorney's fees as the prevailing party in an OPRA action under N.J.S.A. 47:1A-6. Id. at 31.

Plaintiff subsequently filed new OPRA requests claiming he was entitled to obtain additional records under Doe I. Defendants identified several thousand pages responsive to plaintiff's requests and advised him he could obtain the records after paying "special service charges."

Refusing to pay, plaintiff filed a second OPRA action, claiming defendants denied his new OPRA requests by imposing special service charges in violation of the Family Educational Rights and Privacy Act of 1974 (FERPA), 20 U.S.C. § 1232g(a)(1). A month later, plaintiff filed a motion to enforce litigant's rights under Doe I's trial court docket and a motion to obtain attorney's fees arising from this motion. Rutgers removed plaintiff's second OPRA action to federal court and filed a cross-motion in state court to enforce a settlement agreement it had previously reached with plaintiff in Doe I.

The trial court denied plaintiff's motion to enforce litigant's rights and motion for attorney's fees but granted in part Rutgers' motion to enforce settlement. After plaintiff filed the within appeal and Rutgers cross-appealed from those orders, the United States District Court for the District of New Jersey dismissed plaintiff's second OPRA action in Doe v. Rutgers, State Univ. of N.J., No. 21-17811 (KM) (AME), 2022 U.S. Dist. LEXIS 91897, at *15 (D.N.J. May 20, 2022), and plaintiff appealed to the United States Court of Appeals for the Third Circuit.

While the federal court appeal was pending, plaintiff filed his merits brief in this appeal, which, like his federal brief, argued defendants denied his 2021 OPRA requests by imposing special service charges unlawful under FERPA. The Third Circuit rejected plaintiff's argument in an unpublished decision affirming the District Court. Doe v. Rutgers, State Univ. of N.J. (Doe II), No. 22-2087, 2023 U.S. App. LEXIS 4626, at *8-9 (3d Cir. Feb. 27, 2023).

Based upon our review of the record, the parties' arguments, and applicable legal principles, we now dismiss plaintiff's appeal regarding his motion to enforce litigant's rights as collaterally estopped by Doe II; dismiss his appeal as to his motion for attorney's fees; and affirm the trial court's order granting in part Rutgers' motion to enforce settlement.

I.

We first address plaintiff's motion to enforce litigant's rights and motion for attorney's fees. Our analysis of these motions is, as summarized above, intertwined with the federal litigation that led to Doe II.

A.

In March 2018, plaintiff submitted two OPRA requests seeking records related to disciplinary proceedings he had faced as a graduate business student at Rutgers University-Newark. His requests included financial, academic,

4

administrative, and communications records within specific parameters. The trial court denied plaintiff's OPRA requests and attorney's fees.

Plaintiff appealed. We concluded plaintiff was entitled to "his own academic transcripts, discipline records, and financial records" but agreed the rest of plaintiff's requests were overbroad, as they required Rutgers' records custodian "to exercise his discretion, survey staff, or undertake research to determine if he was responsive to the request[s]." Doe I, 466 N.J. Super. at 28-31. In addition, "[w]e remand[ed] for the trial court to determine whether plaintiff [was] entitled to any attorney's fees related to his efforts to obtain these records." Id. at 31.

Three months after Doe I was issued, plaintiff submitted two more OPRA requests to defendants. This time, the requests were for "file[s on plaintiff] kept by" and "emails, memos, text messages, voice mail, letters, etc., sent or received by" seven individuals who were witnesses in plaintiff's disciplinary proceedings or members of the disciplinary committee. Defendants identified 1,960 pages responsive to plaintiff's first request and 4,608 pages responsive to his second request. Defendants advised plaintiff he had to pay special service charges

A-1004-21

totaling $7,020^2$ for the time defendants needed to review the documents and redact other students' personally identifiable information before giving the records to him. Plaintiff refused to pay.

In August 2021, plaintiff filed a verified complaint and order to show cause in the Law Division seeking an order compelling Rutgers and Jewell Battle, in her official capacity as the OPRA administrator and records custodian of Rutgers University, to comply with his 2021 OPRA requests and rescind the service charges. The complaint alleged the special service charge violated FERPA and 34 C.F.R. § 99.11(b) and "constructive[ly] den[ied] . . . access under OPRA." Defendants removed this new OPRA action to federal court.

Before the complaint was removed, plaintiff filed a motion to enforce litigant's rights under Doe I's state court docket, claiming defendants had failed "to provide [him] copies of his own discipline records . . . [and] of communications of persons involved in [his]" disciplinary proceedings. The court denied the motion, concluding Doe I did not automatically entitle plaintiff to documents outside of "[his] official disciplinary record" "contain[ing] some information that may have some connection to [plaintiff's] disciplinary"

---

[2] Defendants charged hourly rates of $45 for forty pages (no charge for the first four hours), totaling $2,025 for forty-nine hours to review the first batch of records and $4,995 for 115 hours to review the second batch.

proceedings. The court's bench decision did not address plaintiff's accompanying motion for attorney's fees, but the court issued a separate order denying the motion when it denied the motion to enforce litigant's rights.

After plaintiff appealed both orders, the District Court dismissed plaintiff's second OPRA action under Federal Rule of Civil Procedure 12(b)(6)[3] on May 20, 2022. Doe, 2022 U.S. Dist. LEXIS 91897, at *15. The District Court[4] ruled FERPA did not apply to plaintiff's requests for emails and other correspondence "by the professors who sent and received them" because those materials are not "education records" subject to FERPA. Id. at *12-13. The court added even if they were education records, federal law did not prohibit the special service charges "to review, redact, and copy the records and provide them to plaintiff," as FERPA permits copying fees and neither FERPA nor its regulations address redaction fees. Id. at *13 n.7. Separately, the court also found the charges reasonable under OPRA, which permits "a special service

---

[3] 12(b)(6) motions are the federal counterpart to Rule 4:6-2(e) motions to dismiss for "failure to state a claim upon which relief can be granted."

[4] The District Court's holding as to the special service charges only applied to plaintiff's second 2021 OPRA request, as the court separately concluded the first request was time-barred by the forty-five-day statute of limitations for OPRA actions. Id. at *8-11; see Mason v. City of Hoboken, 196 N.J. 51, 70 (2008). Neither party raised this issue on appeal, and plaintiff argues before us that FERPA prohibited the special service charges for both requests.

charge . . . based upon the actual direct cost of providing" copies of the requested records. Id. at *13-14 (quoting N.J.S.A. 47:1A-5(c)).

Two months after the District Court issued its decision, plaintiff filed his merits brief in this appeal. Five months later, the Third Circuit issued Doe II, affirming dismissal of plaintiff's second OPRA action and concluding "neither FERPA nor OPRA bars Rutgers from collecting a service fee . . . for the email correspondence responsive to" plaintiff's new requests. 2023 U.S. App. LEXIS 4626 at *8-9. We requested supplemental briefing on whether Doe II had any impact on the issues raised in this appeal.

B.

Before us, plaintiff repeats his argument that defendants' improper imposition of special service charges equates to a denial of his OPRA requests. He contends FERPA's implementing regulation, which prohibits an educational institution from "charg[ing] a fee to search for or to retrieve the education records of a student," 34 C.F.R. § 99.11(b), also prohibits defendants' special service charges. He further claims OPRA disallows the special service charges because they are not reasonable fees "based upon the actual direct cost of providing the copy or copies" of the requested records. N.J.S.A. 47:1A-5(c). Defendants contend Doe II collaterally estops plaintiff from continuing to make

8

these arguments, which are "identical" to the analysis the Third Circuit rejected on these issues.

Plaintiff counters: (1) Because <u>Doe II</u>'s holding only applies to the 2021 OPRA request for which the District Court analyzed the legality of the special service charge, he may continue to challenge the other request's special service charge in this appeal; (2) <u>Doe II</u> erroneously held plaintiff "was not entitled to free access to any of his own students records because [defendants] alleged they were not maintained by a central custodian as required by FERPA"; and (3) <u>Doe II</u> never addressed FERPA in relation to defendants' special service charge. We are unpersuaded and dismiss his appeal as collaterally estopped by <u>Doe II</u>.

Collateral estoppel "bars relitigation of issues in suits that arise from different causes of action." <u>Selective Ins. Co. v. McAllister</u>, 327 N.J. Super. 168, 173 (App. Div. 2000) (citing <u>United Rental Equip. Co. v. Aetna Life & Cas. Ins. Co.</u>, 74 N.J. 92, 101 (1977)). The doctrine arises "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment." <u>Winters v. N. Hudson Reg'l Fire & Rescue</u>, 212 N.J. 67, 85 (2012) (alteration in original) (quoting <u>Restatement (Second) of Judgments</u> § 27 (1982)).

Plaintiff reiterates the same interpretations of FERPA and OPRA he unsuccessfully raised in his second OPRA action. The Third Circuit rejected

plaintiff's interpretation of FERPA as prohibiting defendants' special service charges and found the charges reasonable under OPRA. Doe II, 2023 U.S. App. LEXIS 4626 at *8-9. "A judgment 'on the merits' in a federal court will preclude a later action on the same merits in a state court." Reid v. Reid, 310 N.J. Super. 12, 19 (App. Div. 1998). Thus, plaintiff is collaterally estopped from raising these claims again. See Allesandra v. Gross, 187 N.J. Super. 96, 104 (App. Div. 1982) (observing issues in one action that were "actually litigated and determined" in a prior action are "conclusive" (quoting Mazzilli v. Accident & Cas. Ins. Co., 26 N.J. 307, 313-14 (1958))).

Contrary to plaintiff's claim, the Third Circuit addressed FERPA's effect on the special service charges. The court explicitly stated "neither FERPA nor OPRA bars Rutgers from collecting a service fee." Doe II, 2023 U.S. App. LEXIS 4626 at *9. Plaintiff inaccurately contends Doe II allows him to relitigate OPRA claims the District Court deemed time barred. He cannot, through this appeal, repeat the rejected arguments for the time barred OPRA request. See, e.g., First Union Nat'l Bank v. Penn Salem Marina, Inc., 190 N.J. 342, 351-55 (2007) (precluding the plaintiff's re-argument of the same issue in an action on the note and a foreclosure action).

C.

Plaintiff's entitlement to relief hinges on whether defendants denied him access to records we directed them to provide to him in Doe I. See Asbury Park Bd. of Educ. v. N.J. Dep't of Educ., 369 N.J. Super. 481, 486 (App. Div. 2004). "The scope of relief in a motion in aid of litigants' rights is limited to remediation of the violation of a court order." Abbott v. Burke, 206 N.J. 332, 371 (2011); see also R. 1:10-3. As defendants' special service charges were both lawful under FERPA and reasonable under OPRA, plaintiff now has no basis to claim defendants denied his 2021 requests. Thus, even assuming arguendo Doe I entitled plaintiff to the requested records, defendants did not violate our directive by "denying" plaintiff's requests.

Though we need not address whether the files and faculty communications plaintiff requested constitute disciplinary records under Doe I, we add for the sake of completeness that he relies solely on the fact the requested files might contain information about his disciplinary proceedings. Defendants would have to "collect" correspondence to and from the seven individuals plaintiff named and filter for materials pertaining specifically to his disciplinary process. See Lagerkvist v. Off. of the Governor, 443 N.J. Super. 230, 237 (App. Div. 2015). Thus, the trial court correctly discerned Doe I does not contemplate defendants

11

undertaking such an effort to provide plaintiff's "discipline records." See 466 N.J. Super. at 28-30.

D.

As to his motion for attorney's fees, plaintiff argues the trial court erred in failing to properly place factual findings and legal conclusions on the record when denying the motion. See R. 1:7-4(a). We find no reversible error there, as the court cogently placed factual findings and legal conclusions on the record when denying plaintiff's motion to enforce litigant's rights (i.e., the motion for which plaintiff had sought attorney's fees). As such, plaintiff suffered no prejudice when the trial court denied him attorney's fees for a motion in which he did not prevail. See N.J.S.A. 47:1A-6. Accordingly, plaintiff's appeal of the court's order denying his motion for attorney's fees is also dismissed.

II.

We now turn to Rutgers' cross-appeal related to the parties' settlement efforts.

In Doe I, we "remand[ed] for the trial court to determine whether plaintiff [was] entitled to any attorney's fees related to his efforts" in his initial OPRA action. 466 N.J. Super. at 31. The parties subsequently began settlement negotiations. Plaintiff emailed Rutgers proposing that "if Rutgers offers us $47,500, we would accept that in full and final satisfaction of our counsel fees

12

[claim]." Rutgers responded, "[o]n the basis of your e-mail below, we have a settlement at $47,500. Please confirm." Plaintiff promptly replied "[c]onfirmed."

Rutgers drafted a settlement agreement reflecting the agreed-upon terms. Before the parties signed a final agreement, however, plaintiff expressed concern to Rutgers over the settlement payment counting as income paid to plaintiff, which would increase his tax obligations. Plaintiff asked Rutgers to "gross up" the settlement by providing additional consideration to offset the potential tax liability. Rutgers refused. Plaintiff also refused to provide Rutgers with a Form W-9, a tax form containing information Rutgers needed to report the settlement payment to the Internal Revenue Service (IRS).

After plaintiff filed his motions, Rutgers cross-moved to enforce the settlement agreement, which plaintiff opposed. The trial court granted Rutgers' motion in part and issued an order stating the university must pay the agreed-upon $47,500 sum but "[s]ubmission of a W-9 or 1099 form from [plaintiff] is not necessary for" Rutgers to pay.

Rutgers asks us to modify the trial court's order by requiring plaintiff to submit a W-9. The university contends this requirement will "give effect to the principal terms of the settlement while incorporating ancillary terms that would permit [Rutgers] to comply with its legal obligations." Rutgers further claims

13

federal tax laws require it to report the settlement as income paid to plaintiff and plaintiff prevents Rutgers from following these laws by not providing a W-9. See 26 U.S.C. §§ 6041A, 6045(f); 26 C.F.R. § 1.6041-1(f).   While we acknowledge Rutgers' federal tax obligations,[5] they do not warrant modifying the court's order.

Settlement agreements are "governed by principles of contract law." Thompson v. City of Atlantic City, 190 N.J. 359, 379 (2007).  "[I]f parties agree on essential terms and manifest an intention to be bound by those terms, they have created an enforceable contract."  Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992).  Once parties form an enforceable contract, the agreement remains binding even if a final "writing does not materialize because a party

---

[5]    Indeed, the IRS Code explicitly illustrates the reporting obligations settlements trigger:

> Attorney P represents client Q in a breach of contract action for lost profits against defendant R. R settles the case for $100,000 damages and $40,000 for attorney['s] fees.   Under applicable law, the full $140,000 is includible in Q's gross taxable income. R issues a check payable to P and Q in the amount of $140,000.  R is required to make an information return reporting a payment to Q in the amount of $140,000.  For the rules with respect to R's obligation to report the payment to P, see [26 U.S.C. § 6045(f)] and the regulations thereunder.
>
> [26 C.F.R. § 1.6041-1(f)(2).]

14

later reneges." Harrington v. Harrington, 281 N.J. Super. 39, 46 (App. Div. 1995) (quoting Lahue v. Pio Costa, 263 N.J. Super. 575, 596 (App. Div. 1993)).

Under these principles, plaintiff formed a binding contract with Rutgers by accepting its offer:  if Rutgers paid $47,500 to plaintiff's lawyers, he would deem his claim to attorney's fees fully satisfied.  See Shebar v. Sanyo Bus. Sys. Corp., 111 N.J. 276, 289 (1988) ("The essential requirement of consideration is a bargained-for exchange of promises or performance . . . .").  This exchange encompassed all the agreement's essential terms, which did not include the mechanics of how Rutgers would pay the settlement.  See Lahue, 263 N.J. Super. at 596.  The parties settled over plaintiff's attorney's fees, but not plaintiff's or Rutgers' tax obligations.  Because they agreed exactly how much Rutgers would pay and precisely what plaintiff had to do in exchange, the trial court properly concluded Rutgers must pay plaintiff the agreed-upon sum.

As to Rutgers' argument that it cannot satisfy its tax obligations unless plaintiff provides a W-9, this issue is immaterial to the settlement's enforceability.  The settlement is enforceable even if its tax implications inconvenience one or both parties.  See Graziano v. Grant, 326 N.J. Super. 328, 342 (App. Div. 1999) (observing courts need not "make a better contract for either party").  The trial court's order did not prohibit Rutgers from ever seeking plaintiff's W-9 or reporting the settlement to the IRS.  It simply directed Rutgers

15

to pay plaintiff even if he did not provide the requested tax form.  Rutgers points to no authority requiring plaintiff to provide a W-9 before it pays the settlement.  See 26 C.F.R. § 1.6041-1(f)(1).

To the extent we have not addressed the parties' remaining arguments, it is because we conclude they lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Dismissed as to plaintiff's appeal, affirmed as to Rutgers' cross-appeal.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1004-21